IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MICHAEL BOWMAN § | | |
| Reg. #: 17100-424 § | | |
| v. § | | C.A. NO. C-11-373 |
| § | | |
| UNITED STATES OF AMERICAN, ET AL. § | | |

## OPINION DENYING RESPONDENTS' MOTION TO DISMISS

Petitioner is a federal prisoner currently incarcerated at the Federal Correctional Institution in Lompoc, California. (D.E. 20, at 1). On November 18, 2011, he filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2241, challenging a disciplinary proceeding. (D.E. 1). Pending is Respondents' motion to dismiss. (D.E. 20). For the reasons stated herein, Respondents' motion to dismiss is denied.

## I. JURISDICTION

Section 2241 petitions must be filed in the district wherein the prisoner is incarcerated. Pack v. Yusuff, 218 F.3d 448, 451 (5th Cir. 2000) (citations omitted). Petitioner was incarcerated in Live Oak County, Texas at the time he filed his complaint. (D.E. 1). Because jurisdiction attaches upon the initial filing for habeas corpus relief regardless of whether the inmate is subsequently transferred elsewhere, see United States v. Gabor, 905 F.2d 76, 78 (5th Cir. 1990) ("[t]o entertain a § 2241 habeas petition, the district court must, upon the filing of the petition, have jurisdiction over the prisoner or his custodian"), jurisdiction is therefore proper in this Court. 28 U.S.C. § 124(b)(6). Upon consent of the parties, (D.E. 10, 22), the action was referred to a United States Magistrate Judge to conduct all further proceedings, including entry of final judgment. (D.E. 23); see also 28 U.S.C. § 636(c).

## II.  BACKGROUND

On October 21, 2011, Officer Rebbe conducted a random shake-down of a cell shared by Petitioner and Levell Washington.  (D.E. 1-1, at 1).  During the search, he discovered a makeshift knife in a hole at the bottom of Petitioner's locker, which was situated directly above Mr. Washington's locker.  Id.; (D.E. 1-3, at 2).  After questioning by prison officials, Mr. Washington claimed ownership of the weapon.  (D.E. 1-1, at 2).  An incident report was issued on the same day.  (D.E. 1-3, at 1).  This matter was also referred to an Assistant United States Attorney for prosecution in federal court.  (D.E. 1-1, at 2).

A disciplinary hearing was held on December 9, 2010 to determine whether Petitioner committed a Code 104 offense for possessing a dangerous weapon.  Id.  Petitioner requested and received a staff representative for the hearing.  Id. at 2.  At the hearing, the disciplinary hearing officer examined a memorandum written by Officer Rebbe on October 21, 2010 recounting the incident as well as a photograph of the confiscated weapon that was taken on the same day.  Id.  Petitioner denied ownership of the knife, claimed that the weapon was found in between his and Mr. Washington's lockers, and pointed out that Mr. Washington had admitted it was his.  Id.  He also called on Mr. Washington as a witness.  Id.  At the hearing, however, Mr. Washington disclaimed having any knowledge about the knife and specifically said "[i]t's not mine."  Id.

On December 16, 2010, the hearing officer found that Petitioner violated Code 104 based on the aforementioned evidence presented at the hearing.  Id. at 1-2.  As a result, he was assessed 41 days loss of good conduct time, given 50 days of disciplinary segregation, and lost 180 days of commissary, telephone, email, and visitation privileges.  Id. at 3.  A disciplinary transfer was also recommended.  Id.

Petitioner appealed the disciplinary sanctions on January 3, 2011, challenging the disciplinary conviction on the basis that there was enough evidence to establish that he did not commit the Code 104 violation. (D.E. 1-2, at 7-8). In addition, he attached a letter written by Mr. Washington on January 4, 2011, in which he recanted his earlier statements given at the disciplinary hearing and claimed ownership of the weapon. Id. at 8. He explained that he was told by his lawyer not to make any incriminating statements at the hearing while he was facing criminal charges in federal court, but he now wanted to accept responsibility for possessing the knife. Id. Mr. Washington also declared that "[Petitioner] did not possess or have any prior knowledge of the weapon found ... because the weapon was mine and I hid it in the cell without informing him of its presence." Id.

On May 3, 2011, Regional Director Michael K. Nalley denied Petitioner's appeal because there was "some evidence" to support the disciplinary conviction. Id. at 5. He explained that "[y]ou are responsible for anything found inside your locker" and determined that "the weapon was found inside a hole at the bottom of your locker." Id. Mr. Nalley also discounted Mr. Washington's credibility because due to the conflicting statements given throughout the disciplinary process and disregarded the letter admitting guilt. Id.

Petitioner submitted another appeal on May 23, 2011. Id. at 6. He clarified that the weapon was not found inside his locker, but rather in a space between the bottom of his locker and the top of Mr. Washington's locker. Id. Claiming that this was "common area," he argues that it was not "amongst my property." Id. He also added that Mr. Washington did not give inconsistent statements because he was then under a criminal investigation for possessing the weapon and was told by his attorney not to incriminate himself. Id. It was only after he pled

3

guilty that he recanted his earlier statement that he had no knowledge about the knife. Id. Because a district judge accepted this guilty plea, Petitioner argues that Mr. Washington's statement of guilt is credible. Id.

On September 7, 2011, Harrell Watts, the Administrator of National Inmate Appeals, denied this appeal after finding that the hearing officer's decision was reasonable and rational. Id. at 2. He emphasized that "inmates are responsible to keep their area free of contraband" and reiterated the earlier findings that "[t]he contraband ... was located in an area to which you were assigned." Id. Finally, Mr. Watts disregarded Mr. Washington's confession due to his questionable credibility and because "the evidence is sufficient to support the finding" of guilt. Id.

### III.  PETITIONER'S ALLEGATIONS

Petitioner claims that he was wrongly convicted of violating Code 104 for possessing the knife. (D.E. 1-1, at 3). He argues that he has shown a colorable claim of factual innocence and that failure to grant this petition would result in a fundamental miscarriage of justice. Id. He seeks "dismissal of the charge of code 104" and "restoration of good-time taken." (D.E. 1, at 6).

### IV.  DISCUSSION

Respondents urge that this petition be dismissed because Petitioner was afforded all due process protections and because there was sufficient evidence to support the hearing officer's decision. (D.E. 20, at 10-12).

**A.** **Petitioner Has A Liberty Interest In His Good-Time Credits.**

A petitioner challenging a disciplinary hearing must show that the punishment intrudes on a protected liberty interest "so as to entitle him to those minimum procedures appropriate

under the circumstances and required by the due process clause to insure that the state-created right is not arbitrarily abrogated." Madison v. Parker, 104 F.3d 765, 768 (5th Cir. 1997) (citation omitted); see also Malchi v. Thaler, 211 F.3d 953, 957 (5th Cir. 2000) ("Federal habeas relief cannot be had 'absent the allegation by a plaintiff that he or she has been deprived of some right secured to him or her by the United States Constitution....'") (citation omitted).  The Supreme Court has explained that "these [liberty] interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force ..., nonetheless imposes atypical and significant hardship ... in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995) (citations omitted).  The Fifth Circuit has further explained that "these interests are generally limited to state created regulations or statutes which affect the quantity of time rather than the quality of time served by a prisoner." Madison, 104 F.3d at 767.

Good-time credits are not a right guaranteed by the Constitution. Id. at 768 (citing Wolff v. McDonnell, 418 U.S. 539, 557 (1974)).  However, they become liberty interests protected by the minimum procedures guaranteed by the Fourteenth Amendment if a state creates a right in them and makes them revocable for misconduct. Id.  The Fifth Circuit has held that federal prisoners have a protected liberty interest in good-time credits. Neal v. Casterline, 129 F. App'x 113, 114 (5th Cir. 2005) (per curiam) (unpublished) (citing Henson v. U.S. Bureau of Prisons, 213 F.3d 897, 898 (5th Cir. 2000) (per curiam)).

Respondents concede that Petitioner has a liberty interest in his accumulated good-time credit.  (D.E. 20, at 9).  Accordingly, Petitioner has a liberty interest in his 41 days loss of good

conduct time,[1] but not his 180 days loss of commissary, telephone, e-mail, and visitation privileges, or his 50 days in segregated confinement. His claims proceed only insofar as they are based on his loss of good conduct time.

**B.      There Is No Evidence In The Record That Petitioner Received A Written Notice Of The Charges.**

The Supreme Court has explained that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff, 418 U.S. at 556 (citation omitted); Broussard v. Johnson, 253 F.3d 874, 876 (5th Cir. 2001) (per curiam) (citing Wolff). In Wolff, the Supreme Court held that due process requires an inmate facing a disciplinary action be provided: (1) a written notice of the disciplinary action charges, at least twenty-four hours before the hearing; (2) a written statement by the fact finder of the evidence and reasons for the disciplinary action; and (3) an opportunity to present evidence and call witnesses in his defense, if not unduly hazardous to institutional safety or correctional goals. 418 U.S. at 564-66.

Petitioner has submitted disciplinary records relating to this incident. (D.E. 1-3, at 1-3). These records do not indicate when he was provided with adequate written notice that he was being charged for a Code 104 violation. Nevertheless, Respondents insist that sufficient notice of the charges was provided and quotes a portion of the disciplinary officer's report in support of this assertion: "The [disciplinary hearing officer] considered that the disciplinary process was delayed due to referral to the FBI as well as the incident report being rewritten to provide you

---

[1] Respondents claim that Petitioner only lost eleven days of good conduct time. (D.E. 20, at 10). Further scrutiny of the record, however, indicates that he was actually penalized with forty-one days loss of good conduct time. (D.E. 1-3, at 3). This is corroborated by Bureau of Prisons regulations, which mandate at least forty-one days loss of good conduct time for "Greatest Severity Level Offenses," 28 C.F.R. § 541.4, such as possession of a dangerous weapon. § 541.3, Table 1.

with sufficient notice of the charges." (D.E. 20, at 11). Although this quoted passage can certainly be read to suggest that Petitioner may have been provided with the requisite written notice at least twenty-four hours in advance of the hearing, there is simply no evidence to definitely establish that currently in the record.

In addition, while Petitioner acknowledges that he was charged with violating Code 104 on the date the knife was discovered, (D.E. 1-1, at 1), he does not specify whether the notice was in written form. See Wolff, 418 U.S. at 564 (oral statement of charges is insufficient to satisfy due process requirements). Moreover, Respondents' quoted passage indicates that the incident report had to be "rewritten" at some time after the date the report was first drafted so that Petitioner could be provided with "sufficient notice of the charges." (D.E. 20, at 11). As a result, it is unclear when he received the revised notice, which was apparently issued to remedy the inadequacy of the earlier incident report document. Without evidence about when Petitioner actually received the final version of any document describing the charge being leveled against him, he has failed to demonstrate that dismissal is warranted at this time. See Jackson v. Procunier, 789 F.2d 307, 309 (5th Cir. 1986) (motion to dismiss is "evaluated only on the pleadings") (citation omitted).[2]

For the purposes of this motion to dismiss, Wolff's notice requirement has not been satisfied. Because all three Wolff procedural requirements must be met, the failure to provide advance written notice of the charge alone would operate to deprive Petitioner of his right to due process.

---

[2] To the extent that Respondents seek dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Fifth Circuit has determined that such a motion "is an inappropriate practice in habeas." Miramontes v. Driver, 243 F. App'x 855, 856 (th Cir. 2007) (per curiam) (unpublished) (citing Browder v. Director, Dep't of Corrs. of Ill., 434 U.S. 257, 269 n.4 (1978)).

## V. CONCLUSION

Based on the foregoing reasons, Respondents' motion to dismiss, (D.E. 20), is DENIED.

ORDERED this 13th day of April 2012.

_____
BRIAN L. OWSLEY
UNITED STATES MAGISTRATE JUDGE