IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MICHAEL BOWMAN | § | |
| Reg. #: 17100-424 | § | |
| v. | § | C.A. NO. C-11-373 |
| | § | |
| UNITED STATES OF AMERICA, ET AL. | § | |

**OPINION AND ORDER GRANTING
RESPONDENTS' MOTION FOR SUMMARY JUDGMENT**

Petitioner is a federal prisoner currently incarcerated at the Federal Correctional

Institution in Lompoc, California.  (D.E. 27, at 4; D.E. 27-1, at 2).  Proceeding pro se, he filed a

habeas corpus petition pursuant to 28 U.S.C. § 2241, challenging a disciplinary proceeding.

(D.E. 1).  Pending is Respondents' motion for summary judgment.  (D.E. 27).  Petitioner has

filed a response opposing dismissal.  (D.E. 28).  For the reasons stated herein, Respondents'

motion for summary judgment is granted.

## I.  JURISDICTION

Section 2241 petitions must be filed in the district wherein the prisoner is incarcerated.

Pack v. Yusuff, 218 F.3d 448, 451 (5th Cir. 2000) (citations omitted).  Petitioner was

incarcerated in Live Oak County, Texas at the time he filed his habeas petition.  (D.E. 1).

Because jurisdiction attaches upon the initial filing for habeas corpus relief regardless of whether

the inmate is subsequently transferred elsewhere, jurisdiction is therefore proper in this Court.

See United States v. Gabor, 905 F.2d 76, 78 (5th Cir. 1990) ("[t]o entertain a § 2241 habeas

petition, the district court must, upon the filing of the petition, have jurisdiction over the prisoner

or his custodian"); 28 U.S.C. § 124(b)(6).  Upon consent of the parties, (D.E. 10, 22), the action

was referred to a United States Magistrate Judge to conduct all further proceedings, including

entry of final judgment.  (D.E. 23); see also 28 U.S.C. § 636(c).

## II.  BACKGROUND

On October 21, 2011, Officer Rebbe conducted a random shake-down of a cell shared by Petitioner and Levell Washington at the Federal Correctional Institution in Greenville, Illinois. (D.E. 1-1, at 1).  During the search, he discovered a makeshift knife in a hole at the bottom of Petitioner's locker, which was situated directly above Mr. Washington's locker.  Id.; (D.E. 1-3, at 2).  After questioning by prison officials, Mr. Washington claimed ownership of the weapon. (D.E. 1-1, at 2).  An incident report was issued on the same day.  (D.E. 1-3, at 1).  This matter was also referred to an Assistant United States Attorney for prosecution in federal court.  (D.E. 1-1, at 2).  At some point, the incident report had to be rewritten.  (D.E. 1-3, at 2).

A disciplinary hearing was held on December 9, 2010 to determine whether Petitioner committed a Code 104 offense for possessing a dangerous weapon.  (D.E. 1-1, at 2).  He requested and received a staff representative for the hearing.  Id. at 2.  At the hearing, the disciplinary hearing officer reviewed a memorandum written by Officer Rebbe on October 21, 2010 recounting the incident as well as a photograph of the confiscated weapon that was taken on the same day.  Id.  Petitioner denied ownership of the knife, claimed that the weapon was found in between his and Mr. Washington's lockers, and pointed out that Mr. Washington had admitted it was his.  Id.  He also called on Mr. Washington as a witness.  Id.  At the hearing, however, Mr. Washington disclaimed having any knowledge about the knife and specifically said "[i]t's not mine."  Id.

On December 16, 2010, the hearing officer found that Petitioner violated Code 104 based on the aforementioned evidence presented at the hearing.  Id. at 1-2.  As a result, he was assessed 41 days loss of good conduct time, given 50 days of disciplinary segregation, and lost 180 days

of commissary, telephone, email, and visitation privileges.  Id. at 3.  A disciplinary transfer was also recommended.  Id.

Petitioner appealed the disciplinary sanctions on January 3, 2011, challenging the disciplinary conviction on the basis that there was enough evidence to establish that he did not commit the Code 104 violation.  (D.E. 1-2, at 7-8).  In addition, he attached a letter written by Mr. Washington on January 4, 2011, in which he recanted his earlier statements given at the disciplinary hearing and claimed ownership of the weapon.  Id. at 8.  Mr. Washington explained that he was told by his lawyer not to make any incriminating statements at the hearing while he was facing criminal charges in federal court, but he now wanted to accept responsibility for possessing the knife.  Id.  Mr. Washington also declared that "[Petitioner] did not possess or have any prior knowledge of the weapon found ... because the weapon was mine and I hid it in the cell without informing him of its presence."  Id.

On May 3, 2011, Regional Director Michael K. Nalley denied Petitioner's appeal because there was "some evidence" to support the disciplinary conviction.  Id. at 5.  He explained that "[y]ou are responsible for anything found inside your locker" and determined that "the weapon was found inside a hole at the bottom of your locker."  Id.  Mr. Nalley also discounted Mr. Washington's credibility due to the conflicting statements given throughout the disciplinary process and disregarded the letter admitting guilt.  Id.

Petitioner submitted another appeal on May 23, 2011.  Id. at 6.  He clarified that the weapon was not found inside his locker, but rather in a space between the bottom of his locker and the top of Mr. Washington's locker.  Id.  Claiming that this was "common area," he argued that it was not "amongst my property."  Id.  He also added that Mr. Washington did not give

inconsistent statements because he was then under a criminal investigation for possessing the weapon and was told by his attorney not to incriminate himself.  Id.  It was only after he pled guilty that he recanted his earlier statement that he had no knowledge about the knife.  Id.  Because a district judge accepted this guilty plea, Petitioner argued that Mr. Washington's statement of guilt was credible.  Id.

On September 7, 2011, Harrell Watts, the Administrator of National Inmate Appeals, denied this appeal after finding that the hearing officer's decision was reasonable and rational. Id. at 2.  He emphasized that "inmates are responsible to keep their area free of contraband" and reiterated the earlier findings that "[t]he contraband ... was located in an area to which you were assigned."  Id.  Finally, Mr. Watts disregarded Mr. Washington's confession due to his questionable credibility and because "the evidence is sufficient to support the finding" of guilt. Id.

On November 18, 2011, Petitioner filed this federal habeas petition.  (D.E. 1). Respondents filed a motion to dismiss on March 6, 2012.  (D.E. 20).  That motion was denied on April 13, 2012.  (D.E. 24).  Subsequently, they filed an amended answer and a motion for summary judgment on June 25, 2012.  (D.E. 27).  Petitioner registered his opposition on July 5, 2012.  (D.E. 28).

### III.  PETITIONER'S ALLEGATIONS

Petitioner claims that he was wrongly convicted of violating Code 104 for possessing the knife.  (D.E. 1-1, at 3).  He argues that he has shown a colorable claim of factual innocence and that failure to grant this petition would result in a fundamental miscarriage of justice.  Id.  He seeks "dismissal of the charge of code 104" and "restoration of good-time taken."  (D.E. 1, at 6).

## IV.  DISCUSSION

Respondents urge that this petition be dismissed because Petitioner was afforded all due process protections and because there was sufficient evidence to support the hearing officer's decision.  (D.E. 27, at 13-16).

**A.    Respondents' Motion To Expand The Record Is Granted.**

Rule 7 of the Rules Governing § 2254 Cases allows for a party in a habeas case to expand the record with "additional materials relating to the petition" as long as "the party against whom the additional materials are offered" is given "an opportunity to admit or deny their correctness." A court may apply this rule to § 2241 cases as well.  Rule 1(b) of the Rules Governing § 2254 Cases; see also Ortloff v. Fleming, 88 F. App'x 715, 717 (5th Cir. 2004) (per curiam) (unpublished) (applying Rule 6 of the Rules Governing § 2254 to a § 2241 case); Aguayo v. Harvey, 476 F.3d 971, 976 (D.C. Cir. 2007) (applying Rule 7 to a § 2241 case).

Here, Respondents have moved that the record be expanded to include a declaration by Martin Joseph Sweaney.  (D.E. 27, at 2).  Through his position at the Bureau of Prisons, Mr. Sweaney has access to prison records, and he has attached several documents relating to Petitioner's administrative remedy records as well as disciplinary records.  (D.E. 27-1, at 4-14). These records relate directly to the petition.  Moreover, Petitioner received the documents as attachments to Respondents' amended answer and motion for summary judgment, (D.E. 28, at 1), but did not dispute their authenticity.  Accordingly, Respondents' motion to expand the record is granted.

**B.      The Standard Of Review For Summary Judgment Motions.**

Rule 56 of the Federal Rules of Civil Procedure applies to federal habeas corpus cases. Clark v. Johnson, 202 F.3d 760, 764-65 (5th Cir. 2000) (citations omitted).  Summary judgment is appropriate when there is no disputed issue of material fact, and one party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Courts must consider the record as a whole, including all pleadings, depositions, affidavits, interrogatories and admissions on file, in the light most favorable to the non-movant.  Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002) (citations omitted).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact and informing the court of the basis for its motion by identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which support its contention.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 913 (5th Cir. 1992) (citations omitted).  Any controverted evidence must be viewed in the light most favorable to the non-movant, and all reasonable doubts must be resolved against the moving party.  See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); Williams v. Adams, 836 F.2d 958, 960 (5th Cir. 1988) (citation omitted).

If the moving party makes the required showing, then the burden shifts to the non-movant to show that a genuine issue of material fact remains for trial.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); Fields v. City of S. Houston, Tex., 922 F.2d 1183, 1187 (5th Cir. 1991) (citation omitted).  The non-movant cannot merely rest on the allegations of the pleadings, but must establish that there are material controverted facts in order

to preclude summary judgment.  Fed. R. Civ. P. 56(c)(1); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-49 (1986) (citation omitted).  Summary judgment is proper if the non-movant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof.  <u>Celotex</u>, 477 U.S. at 322-23; <u>ContiCommodity Servs., Inc. v. Ragan</u>, 63 F.3d 438, 441 (5th Cir. 1995) (citations omitted).

**C.      Petitioner Has A Liberty Interest In His Good-Time Credits.**

A petitioner challenging a disciplinary hearing must show that the punishment intrudes on a protected liberty interest "so as to entitle him to those minimum procedures appropriate under the circumstances and required by the due process clause to insure that the state-created right is not arbitrarily abrogated."  <u>Madison v. Parker</u>, 104 F.3d 765, 768 (5th Cir. 1997) (citation omitted); <u>see also</u> <u>Malchi v. Thaler</u>, 211 F.3d 953, 957 (5th Cir. 2000) ("Federal habeas relief cannot be had 'absent the allegation by a plaintiff that he or she has been deprived of some right secured to him or her by the United States Constitution....'") (citation omitted).  The Supreme Court has explained that "these [liberty] interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force ..., nonetheless imposes atypical and significant hardship ... in relation to the ordinary incidents of prison life."  <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995) (citations omitted).  The Fifth Circuit has further explained that "these interests are generally limited to state created regulations or statutes which affect the quantity of time rather than the quality of time served by a prisoner."  <u>Madison</u>, 104 F.3d at 767.

Good-time credits are not a right guaranteed by the Constitution.  <u>Id.</u> at 768 (citing <u>Wolff v. McDonnell</u>, 418 U.S. 539, 557 (1974)).  However, they become liberty interests protected by

the minimum procedures guaranteed by the Fourteenth Amendment if the government creates a right in them and makes them revocable for misconduct.  Id.  The Fifth Circuit has held that federal prisoners have a protected liberty interest in good-time credits.  Neal v. Casterline, 129 F. App'x 113, 114 (5th Cir. 2005) (per curiam) (unpublished) (citing Henson v. U.S. Bureau of Prisons, 213 F.3d 897, 898 (5th Cir. 2000) (per curiam)).

On the other hand, the temporary loss of telephone privileges does not implicate a liberty interest.  Lewis v. Dretke, 54 F. App'x 795, 2002 WL 31845293, at *1 (5th Cir. Dec. 11, 2002) (per curiam) (unpublished).  Similarly, the loss of commissary and cell privileges are not atypical, significant deprivations that could encroach upon any liberty interest.  Sandin, 515 U.S. at 485-86; Madison, 104 F.3d at 768 ("[petitioner's] 30 day commissary and cell restrictions ... do not represent the type of atypical, significant deprivations in which a state might create a liberty interest.").  Even segregated confinement as a disciplinary sanction has not been found to implicate constitutional liberty interests.  Sandin, 515 U.S. at 486.

Respondents concede that Petitioner has a liberty interest in his accumulated good-time credit.  (D.E. 27, at 13).  Accordingly, Petitioner has a liberty interest in his 41 days loss of good conduct time,[1] but not his 180 days loss of commissary, telephone, e-mail, and visitation privileges, or his 50 days in segregated confinement.  His claims can proceed only insofar as they are based on his loss of good conduct time.

---

[1] Respondents claim that Petitioner only lost eleven days of good conduct time.  (D.E. 27, at 13).  This assertion is probably based on a bad photocopy of the hearing officer's report, which has partially cut out the first digit denoting how many days of good-time credit were revoked.  (D.E. 1-3, at 3; D.E. 27-1, at 12).  Upon further scrutiny, it is more likely that he was actually penalized with forty-one days loss of good conduct time.  (D.E. 1-3, at 3).  This conclusion is supported by Bureau of Prisons regulations, which mandate at least forty-one days loss of good conduct time for "Greatest Severity Level Offenses," 28 C.F.R. § 541.4, such as possession of a dangerous weapon.  28 C.F.R. § 541.3, Table 1.  Regardless, because Petitioner was afforded all due process rights, this ambiguity is not of any consequence.

**D.      Petitioner Was Afforded Due Process Of Law.**

The Supreme Court has explained that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff, 418 U.S. at 556 (citation omitted); Broussard v. Johnson, 253 F.3d 874, 876 (5th Cir. 2001) (per curiam) (citing Wolff).   Nevertheless, prisoners are entitled to "minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the ... right [to good-time credit] is not arbitrarily abrogated." Wolff, 418 U.S. at 557. Therefore, due process requires an inmate facing a disciplinary action be provided: (1) a written notice of the disciplinary action charges, at least twenty-four hours before the hearing; (2) a written statement by the fact-finder of the evidence and reasons for the disciplinary action; and (3) an opportunity to present evidence and call witnesses in his defense, if not unduly hazardous to institutional safety or correctional goals.   418 U.S. at 564-66.

**1.      Petitioner was provided a written notice of charges.**

Respondents have submitted disciplinary hearing records indicating that Petitioner was delivered an incident report on November 5, 2010, (D.E. 27-1, at 13), and received another copy of the incident report when the investigation of the incident began on November 10, 2010. Id. at 14.  As noted in section eleven of the incident report, the report given to him on both occasions was a rewritten version of an earlier incident report.  Id. at 13.  Petitioner's unsworn counter-assertion that he never received the rewritten notice of the charges is not competent summary judgment evidence, (D.E. 28, at 2), and the Court is not bound to consider it.  See Nissho-Iwai Am. Corp. v. Kline, 845 F.2d 1300, 1306 (5th Cir. 1988) (unsworn declarations not given "under penalty of perjury" pursuant to 28 U.S.C. § 1746 are not regarded as summary judgment

9

evidence sufficient to raise a genuine issue of material fact).  Moreover, nothing in the record

suggests that he was not provided with written notice prior to the hearing.  Petitioner never

before complained about not receiving a written notice of charges in his administrative appeals,

(D.E. 1-2, at 5-8), and no objection on this ground was noted at the hearing by the hearing

officer.  (D.E. 1-3, at 2).  Therefore, there is no genuine dispute that <u>Wolff</u>'s notice requirement

was satisfied.

> **2.      Petitioner was provided a statement by the fact-finder of the evidence and reasons for the disciplinary action.**

Respondents also claim, and Petitioner does not deny, that he was provided with a written

report of the disciplinary hearing, which stated the reason for the disciplinary action and the

punishment imposed.  (D.E. 27, at 15).  In fact, Petitioner attached a copy of this disciplinary

report to his petition for habeas relief.  (D.E. 1-3, at 1-3).  The report listed the evidence on

which the hearing officer relied–the incident report, a memorandum dated on October 21, 2010

from Officer Rebbe which provides a narrative account describing his discovery of the weapon,

and a photograph of the weapon that was found.  <u>Id.</u> at 1.  The record further indicates that

Petitioner received this document on January 3, 2011.  <u>Id.</u> at 3.  Therefore, <u>Wolff</u>'s requirement

for a written statement by the fact-finder of the evidence and the reasons for the disciplinary

action has been met.

> **3.      Petitioner had sufficient opportunity to call witnesses and present evidence.**

The Supreme Court has expressly rejected the proposition that inmates have an

unrestricted right to call witnesses due to the "obvious potential for disruption and for

interference with the swift punishment that in individual cases may be essential to carrying out

the correctional program of the institution."  <u>Wolff</u>, 418 U.S. at 566.  An inmate's due process

right to present evidence and call witnesses in his defense does not extend to confrontation and cross-examination.  Houser v. Dretke, 395 F.3d 560, 562 (5th Cir. 2004).  Prison officials therefore possess considerable discretion to "limit access to other inmates to collect statements or to compile other documentary evidence."  Wolff, 418 U.S. at 566.

Nevertheless, Wolff did not confer "unreviewable discretion" to prison disciplinary boards.  Ponte v. Real, 471 U.S. 491, 498-50 (1985).  Prison officials must justify any decision to limit the presentation of evidence as being "logically related to preventing undue hazards to 'institutional safety or correctional goals'" either at the hearing or later during litigation.  Id. at 497 (citation omitted).

The record reflects that Petitioner was given a hearing on December 9, 2010.  (D.E. 1-3, at 1).  He was given a staff representative during the hearing and was able to call his cellmate Mr. Washington as a witness.  Id. at 2.  Therefore, he was given sufficient opportunity to call witnesses and present evidence.  Because all three Wolff requirements have been met, this due process claim is dismissed because Petitioner's disciplinary proceeding conformed to all due process requirements.

**E.    There Was Sufficient Evidence To Support The Revocation Of Good-Time Credits.**

In federal habeas petitions, review of the evidentiary support for a hearing officer's decision is extremely limited.  Due process requires only that there be "some evidence to support the findings made in the disciplinary hearing."  Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 457 (1985); see also Broussard, 253 F.3d at 877 ("Prison disciplinary proceedings are overturned only where no evidence in the record supports the decision.") (citation omitted).  Even where there is no direct evidence and the existing evidence is meager,

the findings may still be sufficient to support disciplinary sanction.  Hill, 472 U.S. at 457.

      A federal court should not disturb a hearing officer's decision unless the petitioner can show that it was arbitrary and capricious.  Id.; Banuelos v. McFarland, 41 F.3d 232, 234 (5th Cir. 1995) (per curiam) (citation omitted).  The Fifth Circuit has articulated a "highly deferential standard" favoring the findings of prison officials in disciplinary proceedings, and has suggested that courts defer to committee findings on credibility of evidence.  See Adams v. Gunnell, 729 F.2d 362, 370 (5th Cir. 1984) (citation omitted) (stating that sufficiency of evidence in a disciplinary proceeding is tested by a "highly deferential standard" and choosing to defer to a prison committee's choice to believe one witness over another).  Specifically, the Fifth Circuit has explained that an offense report by itself, written by an officer with firsthand knowledge, constitutes "some evidence" to support the prison disciplinary board's finding of guilt.  Hudson v. Johnson, 242 F.3d 534, 537 (5th Cir. 2001) (citation omitted).

      Here, the evidence is meager, especially in light of Mr. Washington's federal conviction for possessing the weapon.  See Hill, 472 U.S. at 457.  Nevertheless, the hearing officer explicitly rested his conclusion that Petitioner committed the prohibited act on the incident report, Officer Rebbe's narrative account of the discovery of the weapon, and a photograph of the weapon.  (D.E. 1-3, at 2).  He also considered Petitioner's oral statement disputing ownership of the weapon as well as Mr. Washington's witness statements disclaiming ownership and knowledge of the weapon.  Id.  Despite Petitioner's strenuous objections that the weapon was not his, there was more than "some evidence" supporting the disciplinary officer's decision.  Therefore, there was constitutionally sufficient evidence to support the disciplinary conviction.

## V.  CONCLUSION

Based on the foregoing reasons, Respondents' motion for summary judgment, (D.E. 27),

is GRANTED, and Petitioner's habeas petition for relief, (D.E. 1), is DISMISSED.

ORDERED this 20th day of July 2012.

BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE